UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:16-cv-24267-ALTONAGA/O'Sullivan

JUAN L. PEREZ and
MARIA A. POSADA, his wife,

    Plaintiffs,

vs.

THE CITY OF SWEETWATER,
RAFAEL DUARTE, RICHARD BRIOSO, and
ARMANDO GONZALEZ,

    Defendants.
_____/

**DEFENDANTS RAFAEL DUARTE, RICHARD BRIOSO, AND ARMANDO GONZALEZ'S, STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendants, RAFAEL DUARTE, RICHARD BRIOSO, and ARMANDO GONZALEZ, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, hereby file this Statement of Material Facts in Support of Summary Judgment, and state:

1.    In the early hours of January 2, 2012, Officer Richard Brioso observed a V-12 Mercedes-Benz, driven by Felipe Torrealba, racing a BMW eastbound on SW 8th Street and weaving through traffic, while he was on his way to start his 6:00 am shift with the Sweetwater Police Department.[1] (Brioso Dep. p. 24-26, 35-36, 109); (Duarte Dep. p. 38). The BMW fled onto the Florida Turnpike and Officer Brioso continued to follow the Mercedes and activated his emergency equipment to stop the Mercedes on a reckless driving charge as he approached

---

[1] Although the traffic was not heavy, there were enough cars on the road that the vehicles had to weave in and out of lanes, cutting other drivers off, to maintain their speeds of approximately 80 to 90 miles per hour. (Brioso Dep. p. 25-26); (PL Dep. p. 120).

Sweetwater jurisdiction.[2] (Brioso Dep. p. 27, 30); (Duarte Dep. p. 38). Officers have authority to conduct traffic stops for driving violations that pose a threat to public safety, even when off duty and outside of their jurisdiction. (Brioso Dep. p. 29); (Benito Dep. p. 36-37); (Gonzalez Dep. p. 118-119); (Duarte Dep. p. 25-26); (Godoy Dep. p. 57-58).

2.  Once Officer Brioso activated his lights, the Mercedes began to slow down but did not stop so he briefly activated his sirens as well. (Brioso Dep. p. 31-32). Before the Mercedes came to a complete stop, an alcoholic beverage was thrown from the window. (Brioso Dep. p. 35). As soon as the vehicles stopped, Officer Brioso advised dispatch of the traffic stop, location, vehicle description, and tag number. (Brioso Dep. p. 30-31). The Mercedes finally stopped near the intersection of SW 109th Avenue and SW 8th Street and Officer Brioso stopped behind the Mercedes. (Brioso Dep. p. 32). Officer Rafael Duarte, Officer Armando Gonzalez, and Corporal Domingo Benito arrived as backup almost immediately.[3] (Brioso Dep. p. 41-43); (Benito Dep. p. 9); (Gonzalez Dep. p. 39-41); (Duarte Dep. p. 23-24).

3.  As Officer Brioso approached the vehicle, he tapped on the rear passenger window and asked the driver to roll down the windows so he could see inside. (Brioso Dep. p. 34); (Benito Dep. p. 11). He could then see the vehicle was occupied by the driver and a passenger in the front seat. (Brioso Dep. p. 34-35). When asked for his license and registration, the driver provided a Texas ID card in the name of Felipe Torrealba, stating that he did not have a driver's

---

[2] Pursuant to Sweetwater's Mutual Aid Agreement and Joint Declaration with Miami-Dade County, Sweetwater police officers have concurrent jurisdiction in Miami-Dade County to arrest for felonies and misdemeanors, including arrestable traffic offenses, any time they are traveling to or from official business, such as traveling to the Sweetwater Police Station before or after a shift. (Brioso Dep. p. 27-29); (Gonzalez Dep. p. 117-18); (Duarte Dep. p. 24-25); (Mutual Aid Agreement and Joint Declaration).

[3] Corporal Benito parked immediately to the left of Officer Brioso's vehicle. (Benito Dep. p. 10-11); (Gonzalez Dep. p. 54). Officer Gonzalez and Officer Duarte parked behind them. (Gonzalez Dep. p. 54); (Duarte Dep. p. 34-35).

license. (Brioso Dep. p. 36-37).

4. Officer Brioso held on to the ID and asked Torrealba to step out of the Mercedes and put his hands on the trunk. (Brioso Dep. p. 37); (Benito Dep. p. 14). Because Torrealba was not behaving suspiciously or violently, Officer Brioso did not pat him down once outside the vehicle. (Brioso Dep. p. 37-38); (Gonzalez Dep. p. 72-73). He also asked the passenger to step out of the vehicle as well to ensure that the passenger could not reach for any weapons that may be inside the vehicle. (Brioso Dep. p. 38-39). He then continued to question Torrealba about his lack of driver's license. (Brioso Dep. p. 41). While Officer Brioso had the occupants out of the vehicle, Officer Gonzalez briefly shined his flashlight into the Mercedes to make sure there were no weapons in plain sight. (Gonzalez Dep. p. 55-56). Officer Duarte arrived after both occupants were removed from the vehicle. (Duarte Dep. p. 34).

5. When Torrealba indicated that he previously lived in Ft. Lauderdale, Officer Brioso and Corporal Benito walked over to Corporal Benito's vehicle to search Torrealba's identity while Officer Gonzalez and Officer Duarte kept watch over the subjects. (Brioso Dep. p. 41, 45-46); (Benito Dep. p. 15-16); (Gonzalez Dep. p. 58-59); (Duarte Dep. p. 41). Although there were no results for Felipe Torrealba, the search did return a result for Alex Torrealba. (Brioso Dep. p. 46-47). They opened the DAVID file for Alex Torrealba, which showed the current ID photograph of a person that looked almost exactly like the driver but was missing a large neck tattoo. (Brioso Dep. p. 46-47); (Benito Dep. p. 16); (Gonzalez Dep. p. 61).

6. The officers then pulled up the DAVID photo array, which shows the history of ID photographs taken in association with a particular driver's license. (Brioso Dep. p. 47); (Gonzalez Dep. p. 61-62). One of the prior photographs clearly showed Felipe Torrealba, including his neck tattoo, for the license in the name of Alex Torrealba. (Brioso Dep. p. 47-48).

Officer Gonzalez approached Torrealba to confirm that he had a matching tattoo. (Gonzalez Dep. p. 64). The officers then called Torrealba over to Corporal Benito's vehicle to question him about his photograph showing up in the array for Alex Torrealba. (Brioso Dep. p. 51); (Benito Dep. p. 18); (Gonzalez Dep. p. 64).

7. Torrealba first looked over to Officer Brioso, then looked behind him over his shoulder, where Officer Duarte was standing. (Brioso Dep. p. 51-52); (Duarte Dep. p. 48); (Gonzalez Dep. p. 65). Torrealba then sprinted for the driver's side of the Mercedes, while pulling at his shirt and reaching for his waistband. (Brioso Dep. p. 53); (Duarte Dep. p. 48-49); (Gonzalez Dep. p. 65); (Benito Dep. p 19-20). Officer Brioso ran toward the rear of the Mercedes while Officer Gonzalez and Officer Duarte chased after Torrealba on foot. (Brioso Dep. p. 54); (Duarte Dep. p. 48-49); (Gonzalez Dep. p. 65-66).

8. Officer Duarte then struggled with Torrealba to remove him from the Mercedes. (Brioso Dep. p. 54); (Duarte Dep. p. 49-50); (Gonzalez Dep. p. 66-67). He was able to open the door of the Mercedes and tried to grab on to Torrealba and pull him from the vehicle. (Duarte Dep. p. 49-50). Torrealba then pulled a firearm from his waistband and started to point it at Officer Duarte. (Duarte Dep. p. 50-51). Officer Duarte leaned back to get out of the direct line of fire and yelled out "Gun!" (Duarte Dep. p. 51). The Mercedes started rolling forward, causing him to lose his footing, and he heard shots fired. (Duarte Dep. p. 51). He was dragged for several feet while he was still holding on to the frame of the Mercedes before letting go. (Duarte Dep. p. 52-53).

9. At the same time, Officer Gonzalez positioned himself parallel to the driver door of the Mercedes and drew his weapon to provide cover to Officer Duarte. (Gonzalez Dep. p. 67-68). He commanded Torrealba to stop struggling and put his hands up. (Gonzalez Dep. p. 68). Instead, the Mercedes began to roll forward and Officer Gonzalez saw Officer Duarte lose his footing but

appeared tangled with something on the vehicle as it began to drag him forward. (Gonzalez Dep. p. 69-70). As Officer Duarte fell away from the driver door, Officer Gonzalez saw Torrealba looking straight at him pointing a firearm. (Gonzalez Dep. p. 70). He immediately yelled out "Gun!" and began firing at Torrealba. (Gonzalez Dep. p. 70, 73-74).

10.  Officer Brioso had just reached the rear of the Mercedes when he heard the shouts of "Gun!" and saw that the Mercedes had begun to roll forward. (Brioso Dep. p. 57-60). From his position in his vehicle, Corporal Benito was able to see Torrealba holding a firearm. (Benito Dep. p. 34). They both saw Officer Duarte lose his footing while the Mercedes dragged him several feet down the road before falling to the ground. (Brioso Dep. p. 58-60); (Benito Dep. p. 21). Officer Brioso then heard a gunshot and thought Torrealba shot either Officer Gonzalez or Officer Duarte. (Brioso Dep. p. 60). He immediately started firing at Torrealba in response. (Brioso Dep. p. 60, 63); (Benito Dep. p. 21). The officers stopped firing as the Mercedes took off excessively fast and fled the scene. (Brioso Dep. p. 62, 109); (Benito Dep. p. 23); (Gonzalez Dep. p. 74, 84).

11.  Corporal Benito, who had remained at his vehicle during the shooting, was the first officer to leave the scene. (Benito Dep. p. 24-25); (Gonzalez Dep. p. 77). Corporal Benito called in the shooting over the radio. (Brioso Dep. p. 64-65, 116-118); (dispatch recordings); (Benito Dep. p. 27, 45-46). By the time he put his vehicle in drive, the Mercedes had already run a red light at the intersection of SW 107th Ave. and SW 8th Street. (Benito Dep. p. 24-25). Corporal Benito had just passed through the intersection when he saw a big ball of smoke in the air further down the road at SW 102nd Ave. (Benito Dep. p. 25). He did not actually see the accident and Torrealba had already fled by the time he arrived. (Benito Dep. p. 26-27).

12.  As soon as the Mercedes sped off, Officer Brioso and Officer Gonzalez ran to Officer

Duarte to help him up off the ground. (Brioso Dep. p. 69); (Gonzalez Dep. p. 82); (Duarte Dep. p. 56). Once they got Officer Duarte up and checked to make sure he was not injured, they returned to their police vehicles. (Brioso Dep. p. 69); (Gonzalez Dep. p. 82); (Duarte Dep. p. 56). Officer Duarte then observed the passenger of the Mercedes fleeing south on foot and chased after him. (Duarte Dep. p. 56).

13. It took approximately one minute for Officer Gonzalez to leave the scene after checking on Officer Duarte and making sure Officer Duarte was able to apprehend the passenger. (Gonzalez Dep. p. 82-83, 85). Officer Brioso was also delayed in leaving the scene because as he was getting into his vehicle, his firearm came un-holstered and fell to the floorboards. (Brioso Dep. p. 69). While in his vehicle, he heard an accident called in over dispatch. (Brioso Dep. p. 70). He did not hear or see the accident. (Brioso Dep. p. 70). Officer Gonzalez was also still at the scene of the traffic stop when Corporal Benito called in the accident. (Gonzalez Dep. p. 84-85). Officer Gonzalez then followed up to advise dispatch that Torrealba had a firearm. (Benito Dep. p. 57); (dispatch recording); (Gonzalez Dep. p. 82-83).

14. None of the officers involved in the traffic stop engaged in an active vehicle pursuit of Torrealba after he fled from the scene. (Gonzalez Dep. p. 82-83, 85); (Brioso Dep. p. 69-70); (Duarte Dep. p. 56); (Benito Dep. p. 25); (Godoy Dep. 78); (Brioso Affidavit); (Gonzalez Affidavit); (Duarte Affidavit); (Taylor Dep. p. 102, 151, 153). The accident occurred at SW 102 Ave and SW 8th Street approximately 35-38 seconds after Corporal Benito called in shots fired, while most of the officers were still at the scene of the traffic stop. (Brioso Dep. p. 118); (Dispatch Recording); (Benito Dep. p. 27, 46); (Bynum Report); (Taylor Dep. p 102, 147-48, 151-53). It took approximately one minute for Officer Gonzalez and Officer Brioso to leave the scene of the traffic stop. (Gonzalez Dep. p. 82-83, 85). It is scientifically impossible for the

Officers to have been engaged in a pursuit at the time of the accident. (Bynum Affidavit).

15.     According to Miami-Dade Traffic Homicide investigators, the Mercedes initially struck a Ford Ranger belonging to the Plaintiff, Juan Perez.[4] (Officers' Resp to PL RFP Bates Stamp No 000063-000070, 000083); (PL Dep. p. 119). It then set off a chain reaction, continuing to collide with three other vehicles before coming to a final resting point 471 feet from the impact with Plaintiff's vehicle. (Godoy Dep. p. 14); (Bynum Report); (Officers' Resp to PL RFP Bates Stamp No 000063-000070, 000083) Plaintiff had been travelling east on SW 8th Street, heading to work at Holy Cross Hospital. (PL Dep. p. 118-119). While driving on 8th Street, he passed the traffic stop of Torrealba and saw the police emergency lights flashing. (PL Dep. p. 128). He saw a white, oval light come up from behind him and slightly to the right at a tremendous speed. (PL Dep. p. 123-124). In a split second he thought he was going to die and then regained consciousness in his wrecked vehicle. (PL Dep. p. 124-125). He has no recollection of the actual impact. (PL Dep. p. 125, 139).

16.     Upon arriving at the scene of the crash, Officer Brioso observed an overturned vehicle he initially thought was the Mercedes but later learned was a pickup truck. (Brioso Dep. p. 72-73). He told the driver of the vehicle that fire rescue was on its way then continued his efforts to secure the scene for fire rescue's eventual arrival. (Brioso Dep. p. 74). Officer Gonzalez also mistook the overturned vehicle for the Mercedes until he noticed a Ford logo on one of the wheels. (Gonzalez Dep. p. 90). He also checked on the occupant of the vehicle and advised him to stop moving. (Gonzalez Dep. p. 91). Another officer remained with the occupant while Officer Gonzalez continued to search for the Mercedes. (Gonzalez Dep. p. 91). It was discovered with significant damage further east on SW 8th Street. (Gonzalez Dep. p. 92). Eventually, Corporal

---

[4] Plaintiff has testified that he does not know who hit him. (PL Dep. p. 100).

Benito, Officer Brioso, and Officer Gonzalez were advised to return to the site of the traffic stop to wait for a union representative. (Benito Dep. p. 28); (Gonzalez Dep. p. 93); (Brioso Dep. p. 75-76).

17.    This incident was investigated by the Miami-Dade Homicide Bureau. (Godoy Dep. p. 11, 14). At the time of the incident, the County and the City of Sweetwater had an agreement by which the County would investigate any officer-involved shooting with contact. (Godoy Dep. p. 21). When it was discovered that a passerby crossing SW 8th Street at 107th Ave might have been struck by a bullet, the County was called in to perform the investigation. (Godoy Dep. p. 22, 28-29). Upon completion of the investigation and review by the State Attorney's Office, it was determined that the Sweetwater officers did not engage in any misconduct. (Godoy Dep. p. 39-40, 76); (Klinger Report)[5].

18.    Torrealba was placed on the US Marshals 15 Most Wanted list following this incident and was not captured for almost one year after this incident occurred. (Brioso Dep. p. 88). A warrant was issued for his arrest on January 5, 2012 after a judge found probable cause that Torrealba resisted an officer with violence when he brandished a firearm at Officer Duarte. (Godoy Dep. p. 76-77). *See attached* (Miami-Dade County Circuit Court Case No. F-12000314 File and plea colloquy transcript from related Miami-Dade County Circuit Court Case No. F-1125394).[6] The Homicide Bureau also put out a wanted bulletin stating there was probable cause to arrest Torrealba for aggravated battery of a law enforcement officer as a result of this incident. (Resp to RFP. Bates Stamp 000356).

---

[5] Plaintiff's expert on police policies conceded that the Officers had a legal right to shoot at Torrealba. (Taylor Dep. p. 107-108, 124-127).
[6] Pursuant to Federal Rule of Evidence 201, state court records are judicially noticeable facts. *Lao-Batista v. Soltis*, 2014 WL 3764151, at *2 (S.D. Fla. July 30, 2014) (citing *United States v. Glover*, 179 F.3d 1300, 1302 n. 5 (11th Cir. 1999)).

19.     The Miami-Dade State Attorney's Office subsequently filed an information charging Torrealba with resisting a law enforcement officer with violence on February 3, 2012. (Godoy Dep. p. 76-77) *See* (Miami–Dade County Circuit Court Case No. F-12000314 File). Torrealba admitted to this crime, among others, and pled guilty based on the facts alleged in the information on April 1, 2016. *See* (Miami-Dade County Circuit Court Case No. F-12000314) At the plea colloquy held in front of Judge Hersch, Torrealba was found to be alert and intelligent, to understand the nature of the offenses and consequences of the plea, and that he pled guilty freely and voluntarily. *See* (plea colloquy transcript from related Miami-Dade County Circuit Court Case No. F-1125394). He was further found to understand that by pleading guilty, he gave up the right to challenge the facts upon which his conviction is based. *See* (plea colloquy transcript from related Miami-Dade County Circuit Court Case No. F-1125394). Resisting arrest with violence is a forcible felony under Florida law that would permit officers to engage in a high speed pursuit of a fleeing felon. (Taylor Dep. p. 171-72); (Klinger Report); *United States v. Romo–Villalobos,* 674 F.3d 1246, 1249 (11th Cir. 2012).

I hereby certify that on this 30th day of May, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        MARRERO & WYDLER
        Attorneys for Defendants Duarte, Brioso and Gonzalez
        2600 Douglas Road, PH-4
        Coral Gables, FL 33134
        (305) 446-5528
        (305) 446-0995 (fax)

        BY _/s/ Oscar E. Marrero_____
            OSCAR E. MARRERO
            F.B.: 372714
            oem@marrerolegal.com
            LOURDES E. WYDLER
            F.B.: 719811
            lew@marrerolegal.com
            ALEXANDRA C. HAYES
            F.B.: 109482
            ach@marrerolegal.com

*Perez, et al. v. City of Sweetwater, et al.*
*District Court Case No.: 1:16-cv-24267-ALTONAGA/O'Sullivan*
*Page 11*

**SERVICE LIST**
**1:16-cv-24267-ALTONAGA/O'Sullivan**

Carolina Corona, Esq.
FBN 645222
Carolina@coronapa.com
Ricardo Corona, Esq.
FBN:
rcorona@coronapa.com
CORONA LAW FIRM
3899 NW. 7th Street
Miami, FL 33131
(305) 547-1234
*Attorneys for Plaintiffs*

Michael R. Piper, Esq.
piper@jambg.com
Christopher J. Stearns, Jr.
stearns@jambg.com
Johnson Anselmo Murdoch Burke Piper & Hochman, P.A.
2455 E. Sunrise Blvd., Suite 1000
Ft. Lauderdale, FL 33304-0220
(954) 463-0100
(954) 436-2444 (fax)
*Attorneys for Defendant City of Sweetwater*