UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-24267

JUAN L. PEREZ and
MARIA A. POSADA, his wife,

Plaintiffs,

v.

THE CITY OF SWEETWATER,
RAFAEL DUARTE, RICHARD BRIOSO
and ARMANDO GONZALEZ

Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF SWEETWATER'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Juan Perez and Maria Posada, through their undersigned counsels hereby submits this brief in opposition of Defendant's Motion for Summary Judgment and respectfully move this Honorable Court to deny the motion. In support thereof, Plaintiffs have filed a concurrent Statement of Material Facts and references their contents.

### Standard of Review

In a Motion for Final Summary Judgment, the moving party carries a heavy burden. Summary Judgment is only appropriate when the movant has shown conclusively that no genuine issues of material fact remain; every inference is drawn in favor of the party against whom summary judgment is sought. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). "Particular caution should be employed when granting summary judgment in negligence actions." Lindsey v. Bill Arfin Bonding Agency, 645 So. 2d 565 (Fla. 1st DCA 1994). "The record must be read in the light most favorable to the nonmoving party." Charlonne

v. Rosenthal. 642 So. 2d at 634. "If the record reflects the existence of genuine issues of fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, that doubt must be resolved against the party moving for summary judgment," Quest Air South, Inc. v. Memphis Group, Inc., 733 So. 2d 1109 (Fla. 4th DCA 1999). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail by a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Argument**

    I.       There was clearly a substantive Due Process Violation

There was a violation of Juan Perez's constitutional rights pursuant to the Fourteenth Amendment substantive due process clause. County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1717 (1998). The Plaintiff has shown that when the evidence is viewed in a light most favorable to them, the actions of the police officers are conscience shocking in a constitutional sense. At the very least, the police were deliberately indifferent to the safety of the innocent people on the road that day and that will be sufficient to establish a substantive due process violation. Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305-1306 (11th Cir. 2003). Additionally, it can be shown that Defendants Brioso, Gonzalez and/or Duarte acted with a purpose to cause harm unrelated to the legitimate object of an arrest. Lewis, 118 S.Ct. at 1711.

It is clear that the City of Sweetwater Police Officers Duarte, Brioso, Gonzalez, and Benito violated Juan Perez's substantive due process rights.  The defense argues that no Sweetwater officer ever engaged in any pursuit. [DE 70 p. 4].   This assertion is completely contradicted by the evidence.  The evidence is clear that Benito was sitting in his car with the car on when Torrealba first went back to the Mercedes. (Gonzalez Stmt. p. 12, Brioso Stmt. p. 16, Duarte Stmt. p. 10, Benito Stmt. p. 10, Gonzalez Dep. p. 77, Brioso Dep. p. 63-64,  Radio Dispatch Transcript p. 4). Benito's own radio communications and the statements of the other officers confirm that Benito initiated a chase.  (Brioso Stmt. p. 16, Gonzalez Stmt. p. 12, Duarte Stmt. p. 10, Radio Dispatch Transcript p.4).   Officer Benito was not the only officer who followed the Mercedes in his car, in fact, on the date of the incident when Rafael Duarte's first sworn statement was taken, he states that "Officer Benito takes off after them and then so does Brioso and Gonzalez." (Duarte Stmt. p. 10 l. 5-6).

The intent to harm is evidenced by the fact that the officers were aware that Torrealba was unarmed and that they had no authority to conduct any investigation.  Relying on the versions of the civilian witnesses, the police illegally detained Torrealba and St. Phar.  The police thoroughly searched them and the car and were aware that they were unarmed. (Benito Dep. p. 15, 53, Benito Stmt. p. 7, Duarte Dep. p. 42, 45, Duarte Stmt. p. 5, Torrealba Dec. ¶ 4). Torrealba was outside his car with his hands in the air immediately before Gonzalez and Brioso opened fire on him. (Perez Dep. p. 133-134).  No officers or civilians were in harm's way, nobody was threatened by him, yet they intended to kill Torrealba. (Brioso Dep. p. 63, Gonzalez Dep. p. 76).  Shooting 23 times at an unarmed traffic offender onto a trafficked thoroughfare while simultaneously chasing him with a police vehicle clearly shows an intent to harm unrelated to a legitimate governmental objective.  So long as a constitutional violation by a Sweetwater

officer can be found, the City of Sweetwater can be held liable if the remaining conditions are satisfied.

    II.    Sweetwater is liable because of unconstitutional policy or custom

        a.  Unconstitutional policy or custom

A municipality can be held liable for violations of 42 U.S.C. § 1983 if the civil rights violation resulted from a policy or custom of the government. <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978). This liability can exist where a persistent and widespread discriminatory practice is not a formal written policy, or even where the custom is contrary to written policy. <u>Id.</u> at 691. "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." <u>Brown v. City of Ft. Laud.</u>, 923 F.2d 1474, 1481 (11th Cir.1991). The police pursuit in this case, by the officer who pursued, is a practice that was trained to do and encouraged to do.

The City of Sweetwater maintains a written policy that provides: "Officers may engage in pursuit when they have reasonable belief that the fleeing suspect has committed or attempted to commit a violent felony. <u>ALL OTHER PURSUITS ARE PROHIBITED</u>." (Sweetwater SOP 7.02, BS 00001103) *emphasis in original*. That policy is what is supposed to be implemented and followed. The City of Sweetwater, however, has been shown to disregard those policies entirely. Corporal Benito himself illustrates the custom that was common and endorsed by the City. In fact, this was not the first time that Benito engaged in a high speed chase with a person whom he was not aware committed a violent felony. When Benito was being trained in 2009, he was in the car with Ofc. Demurias when he began to follow a vehicle that refused to stop for another Sweetwater Police Officer. Demurias and Benito began following the vehicle on 97th

avenue and 8th Street, even though they had not been advised of any felony having been committed by the driver or occupants and even though it was outside of their jurisdiction. It was not until they followed the vehicle for 8 blocks to 97th avenue and 16th street (approximately the same amount of time it took for Felipe Torrealba to crash into Juan Perez) that they were advised to stop pursuing the vehicle. Officers Demurias and Benito continued to follow the car until they were later advised of the occupant's potential involvement in a felony. They continued the pursuit that to 97th avenue and 24th Street where the vehicle lost control and rolled over. (MDPD Case # 09001032 Demurias Report). Benito and Demurias were not reprimanded or admonished for this vehicular pursuit, instead, Benito was commended. (Commendation BS 00000145).

On another occasion, Benito and another Sweetwater officer, Lieutenant Ignacio Menocal, were involved in another high speed chase that led them through Kendall ending up in Medley, and also resulted in the subject of the pursuit being involved in an accident. (Benito Dep. p. 38-40). It is clear that the written policy contained in the Standard Operating Procedures was completely disregarded and the actual policy in effect was that it was acceptable and encouraged to follow an offender at all costs for any reason. There is ample evidence to establish a custom or policy of allowing improper police pursuits in the City of Sweetwater and that this unofficial policy was so widespread that it was deemed authorized by the policy-making officials since they did not attempt to stop the improper pursuits.

    a. Failure to Train

Municipality liability flowing from a policy or custom under § 1983 may be based on the inadequacy of police training where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989); Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1293 (11th

Cir.2009). In order to meet this "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir.1998); Rivas v. Figueroa, 11-23195-CIV, 2012 WL 1378161, at *2 (S.D. Fla. 2012).

As it relates to vehicular pursuits, this is not merely a case of the City not training their officers; there is evidence that the City encouraged these pursuits regardless of the possibility of harm to any other citizens. The City knew that their officers were engaging in high speed pursuits. More specifically, the City knew that Benito had engaged in high speed pursuits that resulted in vehicular accidents. Despite this, the City did not take any action to train Benito or any of the other officers on their proper procedures.

Similarly, the shooting officers were not properly trained on the City's policy against shooting into moving vehicles. The written policy specifically provides that an officer is unauthorized to use a firearm by…"A: Firing into the air or ground in an attempt to halt a fleeing criminal; B. Firing at a person who has been ordered to halt and simply continues walking or runs away; C. Police Officers shall not discharge his firearm to effect an arrest or to stop the fight (sic) of a person who has committed a misdemeanor; D. Firing at or into moving vehicles." (Sweetwater SOP 1.21.2, BS 00001025). Despite these limitations being specifically included in the handbook, Officers Gonzalez and Brioso were unaware that their conduct was prohibited. They were unaware of any policy at all in the City regarding shooting at moving vehicles. (Gonzalez Dep. p. 33, Brioso Dep. p. 65). A policy that is in place to protect from the very injury that Juan Perez suffered. Generally, a police department will prohibit officers from firing at moving vehicles in order to protect the safety of the other innocent people in the area. When

shots are fired at a driver of car, innocent lives are needlessly endangered. (Taylor Dep. p. 115). The City of Sweetwater's failure to train Gonzalez and Brioso properly on the safe and accepted procedures to follow with regard to their firearms was the moving force behind their actions and the resulting injuries to Juan Perez. (Taylor Report p. 5).

The policy in effect at the time in the City of Sweetwater for sworn members who discharge their firearms " intentionally, requires a verbal report shall be made to the On-Duty Supervisor immediately and as soon as possible a written report with all the details should be made to the Chief of Police via chain of command." (Sweetwater SOP 1.21.3, BS 00001025). Neither Gonzalez nor Brioso knew of the policy requiring an officer who discharges a firearm to file a written report. (Gonzalez Dep. p. 94-95, Brioso Dep. p. 77-78). Neither of them followed the official policy. In fact, Brioso did not even report the incident to the supervisor despite him having fired his weapon at least 14 times. (Brioso Dep. p. 77). The City did not properly train their officers regarding their official policies and they did not require them to comply with the official policies.

On June 13, 2017, two former Sweetwater Police Department officers were arrested on racketeering, fraud and conspiracy charges, related to their conduct while on duty. The Affidavit in Support of the Arrest Warrant in their case includes information from the investigation by the FDLE into the Sweetwater Police Department and the City of Sweetwater Administration during the period of time immediately before and after the incident involved in our case. The Affidavit states - there existed within the Sweetwater Police Department (SWP) "a pattern of criminal conduct under color of law that spanned many years and affected many victims". This pattern within the SWP was part of a "culture of corruption that permeated all aspects of the City of Sweetwater" The corruption included collusion between the Mayor of the

City, the SWP, and others within and outside the City to profit from the unlawful stop and illegal seizure of vehicles from unsuspecting motorists. Specifically there existed "a culture of corruption throughout the SWP with sworn and unsworn officers while operating under color of law engaged in a pattern of racketeering activity that included multiple acts of theft, fraud, burglary, torture an other violent crimes against civilians, often targeting foreign born victims … in order to … conceal the officers' unlawful activity from outside authorities."[1]

The incidents that the affidavit speaks of regarding illegal stops is eerily similar of the illegal traffic stop in this case, both Mr. Torrealba (latino) and Mr. St. Phar (Haitian) are foreign-born. Framed with the backdrop of this new information there is evidence to suggest that this vehicle stop was made in furtherance of the City sponsored illegal activities and corruption.

    III.    Common law negligence

        a. No pursuit/ no liability

When analyzing the evidence in a light most favorable to the Plaintiff, it is clear that at least one police officer and likely three police officers from the City of Sweetwater engaged in a vehicular pursuit. As such, this Court must apply the criteria set out in Fl. Stat. 768(9)(d) to our facts in order to determine the City of Sweetwater's liability. When officers engage in hot pursuit, it is an operational function that is not immune from liability *if* accomplished in a manner contrary to reason and public safety. City of Pinellas Park v. Brown, 604 So. 2d 1222, 1227 (Fla. July 23, 1992). Section 768.28(9)(d), Florida Statutes, provides:

> The employing agency of a law enforcement officer as defined in s. 943.10 is not liable for injury, death, or property damage effected or caused by a person fleeing from a law enforcement officer in a motor vehicle if:

---

[1] See Appendix – Affidavit in Support of Arrest Warrant for former Sweetwater Police Officers William Garcia and Remy Garcia.

> 1. The pursuit is conducted in a manner that does not involve conduct by the officer which is so reckless or wanting in care as to constitute disregard of human life, human rights, safety, or the property of another;
>
> 2. At the time the law enforcement officer initiates the pursuit, the officer reasonably believes that the person fleeing has committed a forcible felony as defined in s. 776.08; and
>
> 3. The pursuit is conducted by the officer pursuant to a written policy governing high-speed pursuit adopted by the employing agency. The policy must contain specific procedures concerning the proper method to initiate and terminate high-speed pursuit. The law enforcement officer must have received instructional training from the employing agency on the written policy governing high speed pursuit

Benito, Brioso and Gonzalez were clearly reckless and wanting in care and evidenced a disregard of human life when they decided to engage in a pursuit of Torrealba.  The strongest piece of evidence that points to the recklessness of the pursuit is the statements by Benito himself on the radio. (Radio Dispatch Recording).  He first reports that he is following the vehicle going eastbound on the trail, then he reports shots fired. (Radio Dispatch Transcript p. 4).   The vehicular pursuit appeared to have already begun when the shots were fired.  There is nothing more reckless or wanting in care than unloading multiple shots into a trafficked main street while simultaneously following the target with a police cruiser.  The danger of harm to innocent people in the area is almost definite. The evidence of such is the accident that occurred with the Mercedes and four other vehicles and another person whose car was struck by a stray police bullet.

Evaluating the evidence in a light most favorable to the Plaintiff, the second requirement of Fl. Stat. 768.28(9)(d) is also met. The Sweetwater police officers had no reason to believe that Felipe Torrealba had committed a forcible felony.  At most, he was a fleeing misdemeanant or fleeing traffic offender.  The officer's assert that they believed that Torrealba pointed a gun at them but the only evidence of that is their own conflicting testimony.  Gonzalez was the only

police officer who reported seeing a gun initially and the first time any statement is taken from him is in February, over a month after the incident occurred. (Gonzalez Stmt. p.11). Duarte, who in the police version of facts would have been the closest to Torrealba, at most recalls seeing the grip of a firearm in his waistband when he was already inside the car. (Duarte Stmt. p. 8). Of course, when Duarte's deposition was taken five years after the incident, he recalls seeing the entire gun pointed directly at him. (Duarte Dep. p. 51-52).

Additionally, the evidence shows that Torrealba was patted down and his car was thoroughly searched. (Torrealba Dec. ¶ 4, Benito Dep. p. 15, 53, Benito Stmt. p. 7, Duarte Stmt. p. 5, Duarte Dep. p. 42, 45). Gonzalez and Brioso would have known that Torrealba was unarmed because they made sure of it. The officers then claim that Duarte was dragged and that justified their use of deadly force and the pursuit, however, this allegation is in dispute. On the very day of the incident, the passenger of the car, Dondrey St. Phar says that he was in a position to see Torrealba get in the car and he never saw any officer get dragged. (St. Phar Stmt. p. 10), Torrealba himself states that he never dragged any officer with his car. (Torrealba Dec. ¶ 7). The allegation that there was a warrant out for Torrealba's arrest or his subsequent warrants are not relevant to this inquiry. The police officers had no knowledge of these outstanding or subsequent warrants when they engaged in the pursuit. (Brioso Stmt. p. 10, Gonzalez Stmt. p. 6, Brioso Dep. 49-50). There is clearly evidence that suggests that the Sweetwater police officers engaged in a vehicular pursuit with a person who had not committed a forcible felony.

The third and final element in the Fl. Stat. 768.28(9)(d) analysis is similarly satisfied. The Sweetwater police officers were not acting pursuant to the written policy because they had not been appropriately trained on that policy. The evidence shows that as part of the training, a training officer engaged in conduct almost identical to that which caused these life altering

injuries to Juan Perez. (MDPD Case # 09001032 Demurias Report). The City of Sweetwater commended that action despite their official policy. It is clear that vehicular pursuits were encouraged and commendable regardless of what crime, if any, they had committed and regardless if the pursuit began outside their own jurisdiction.

b. Sweetwater is not immune from suit

Should this court find that there was no pursuit or that the pursuit was not conducted in a way that evidenced a wanton and willful disregard for human safety, the City of Sweetwater is still liable. It is the Plaintiffs' position that the City of Sweetwater and the Defendant officers are both liable as the actions of the officers were willful and wanton and exhibited a willful disregard for the safety of the people in the area *and* they engaged in a pursuit of someone who had not committed a forcible felony, consequently their actions do not create an immunity for Sweetwater or its officers based on Fl. Stat. 768.28(9)(a) and 786.28 (9)(d). However, even if this court finds that there is no genuine issue of material fact as to the bad faith of the officers' actions and grants summary judgment as to the officers individually on the state law claims, the City of Sweetwater should still be liable for their officer's negligence on a theory of *respondeat superior*.

The State of Florida has waived sovereign immunity in tort actions to a certain extent so a Florida municipality may be liable in *respondeat superior* for the tortious conduct of its employees, Richardson v. City of Pompano Beach, 511 So.2d 1121, 1123–24 (Fla.Dist.Ct.App.1987). If this court finds that the police officers conduct was negligent but not willful and wanton or deliberately indifferent to the safety of those in the area, the police officers may be entitled to individual immunity, but Plaintiffs can still seek damages against the police

officer's governmental employer (i.e. the City). Willingham v. City of Orlando, 929 So. 2d 43, 47-48 (Fla. 5th DCA 2006).

Moreover, sovereign immunity is not applicable at all on this case. Sovereign immunity is only applicable to discretionary decisions of governmental agencies for planning level functions not operational level functions. Kaisner v. Kolb, 543 So.2d 732, 737 (Fla.1989). A "discretionary" function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1117–18 (11th Cir.2005). An "operational" function is not inherent in policy or planning but merely reflects a secondary decision as to how those policies or plans will be implemented, and is not entitled to sovereign immunity. Id. at 1118. "[W]hen an officer has made an initial discretionary decision to conduct a stop and then proceeds to carry out that decision, the officer is no longer exercising a 'discretionary' function, but is engaged in an 'operational' task." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir.2001) (citing Kaisner, 543 So.2d at 734, 737–38). Likewise, the decision as to whether use of a firearm is necessary is 'not necessary to or inherent in policy or planning,' as is the decision to initiate a vehicular pursuit and 'merely reflects a secondary decision as to how those policies or plans will be implemented.' " Id. at 1264 (quoting Kaisner, 543 So.2d at 737). Brown v. City of Pinellas Park. 557 So.2d 161 (Fla. 2d DCA 1990) (the precise manner in which a police chase is implemented is not a policy making decision).

With regard to Plaintiffs' state law negligence claims against the City, there are several issues of fact that preclude granting summary judgment based on sovereign immunity. Whether the police were justified in responding aggressively to the situation and subsequently initiating a

high speed vehicular pursuit of Torrealba is a genuine issue of material fact that should be left to the jury. When the evidence is viewed in a light most favorable to Plaintiffs, the record supports Plaintiffs' allegations that Torrealba and the passenger complied with police orders for a significant amount of time during the illegal stop and detention; Torrealba, the passenger and the car were searched and Torrealba was unarmed; and Torrealba had his hands up when he was next to the driver side door of the car and his hands were empty. Accepting these facts, a trier of fact could reasonably conclude that at the time Gonzalez and Brioso discharged their firearms, no pressing threat existed requiring the use of deadly force to protect the public. Furthermore, at the time Benito began the initial chase, no forcible felony had been committed that would justify the risk a vehicular pursuit would pose to the public. The officers actions were, at the very least, negligent.  Their negligence creates liability for the City of Sweetwater.

    IV.    Loss of Consortium

Because there is genuine issues of material fact for Juan Perez's claims to survive summary judgment, so too should Maria Posada's derivative claims.  Courts have held that if the husband maintains a cause of action against the Defendants, the consortium claims should proceed. *See* Cook v. Waters*,* No. 96–cv–1459–T–17E, 1996 WL 685842, at *1 (M.D.Fla. Nov.13, 1996) (holding consortium claim unavailable under Title VII and ADA); Doran v. City of Clearwater, Fla.*,* 814 F.Supp. 1079, (M.D.Fla.1993) (permitting consortium claim in case involving both claims under § 1983 and state law defamation, because claim could have derived from the state law claim). Crawford v. City of Tampa, 8:08-CV-927-T-26EAJ, 2009 WL 64905, at *2 (M.D. Fla. 2009), aff'd in part, rev'd in part and remanded, 397 Fed. Appx. 621 (11th Cir. 2010).

    Respectfully Submitted,

     /s/ Carolina Corona

BY: /s/ Carolina Corona
CAROLINA CORONA, ESQ.
Florida Bar No. 645222
RICARDO CORONA, ESQ.
Florida Bar No.: 111333
CORONA LAW FIRM, P.A.
3899 NW 7th Street, Second Floor
Miami, Florida  33126
(305) 266-1150 – Telephone
(305) 266-1151 – Facsímile
carolina@coronapa.com
foreclosure@coronapa.com

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Notice was served via CM/ECF on all parties on the service list on this 13th day of June, 2017.

SERVICE LIST:
**Lourdes E. Wydler, Esq.**
**Oscar Marrero, Esq.**
MARRERO & WYDLER
Attorneys for Defendants, Duarte, Brioso and Gonzalez
2600 Douglas Road, PH-4
Coral Gables, FL 33134
Telephone:  (305) 446-5528
Facsimile:  (305) 446-0995
oem@marrerolegal.com
lew@marrerolegal.com
ach@marrerolegal.com

**Michael R. Piper, Esq.**
**Christopher J. Stearns, Esq.**
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, PA
Attorneys for Defendants, City of Sweetwater
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
Telephone:  (954) 463-0100
Facsimile:  (954) 463-2444
piper@jambg.com
stearns@jambg.com