UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-24267

JUAN L. PEREZ and
MARIA A. POSADA, his wife,

Plaintiffs,

v.

THE CITY OF SWEETWATER,
RAFAEL DUARTE, RICHARD BRIOSO
and ARMANDO GONZALEZ

Defendants.
_____/

# PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF SWEETWATER'S STATEMENT OF MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs submit this Response to Defendant, City of Sweetwater's, Statement of Material Facts in opposition to Defendant's Motion for Summary Judgment.

1. Disputed, Officer Brioso has only articulated a speeding violation. (Brioso Dep. p. 25, Godoy Dep. p. 36, Brioso Amended Response to Interrogatory #9).

2. Disputed.  The BMW turned right at approximately 122nd Avenue and 8th Street. (Brioso Stmt. p.4).  Brioso then stopped the Mercedes on 109th Avenue.

3. Undisputed.

4. Undisputed.

5. Disputed.  Felipe Torrealba produced a driver's license from Texas. (St. Phar Stmt. p. 8,9).

6. Undisputed.

7. Disputed. The officers were not made aware of any active warrants until after they fired repeatedly at Felipe Torrealba and pursued his vehicle. (Brioso Stmt. p. 10, Gonzalez Stmt. p. 6, Brioso Dep. 49-50).

8. Undisputed.

9. Disputed. Torrealba was not reaching for his waistband. He was standing outside his car with his hands in the air seconds before he got into the Mercedes. (Perez Dep. p. 133-134).

10. Disputed. No officer was able to get into the car with Torrealba. (St. Phar Stmt. p. 10).

11. Disputed. Gonzalez could not have seen a gun as there was no gun. (Torrealba Dec. ¶ 5, Godoy Dep.p. 66). Additionally, Duarte claims that Gonzalez was yelling about a gun before Torrealba got into the car when it would have been impossible for him to have actually seen one. (Duarte Stmt. p. 9).

12. Disputed. Duarte was never dragged by the car. (St. Phar Stmt. p. 10, Torrealba Dec. ¶ 7).

13. Disputed. Gonzalez and Brioso shot at the Mercedes as it was driving away more than 20 times and Felipe Torrealba was hit in the ear by at least one bullet. (Godoy Dep. p. 66, Torrealba Dec. ¶ 8).

14. Disputed. Gonzalez and Brioso took off after Torrealba behind Benito. (Duarte Stmt. p. 10, Brioso Stmt. p. 16).

15. Undisputed.

16. Disputed. Benito was already in his car with the engine running when Torrealba ran to his car, he immediately followed the Mercedes as it was driving off. (Gonzalez Stmt. p. 12, Brioso Stmt. p. 16, Duarte Stmt. p. 10, Benito Stmt. p. 10, Gonzalez Dep. p. 77, Brioso Dep. p. 63-64, Radio Dispatch Transcript p.4). Gonzalez and Brioso took off after Torrealba behind Benito. (Duarte Stmt. p. 10, Brioso Stmt. p. 16).

17. Undisputed.

18. Disputed. Corporal Benito was already inside his vehicle with the vehicle on when Torrealba began driving off in the Mercedes. (Brioso Dep. p. 62). Benito was reporting his location to the dispatcher while he was following Torrealba. (Radio Dispatch Recording).

19. Disputed. Benito was already at the scene, he did not have to drive to the scene of the accident, he was right behind them. (Radio Dispatch Recording). Juan Perez's first memory when he opens his eyes after the impact is a police officer pointing his gun directly at him. (Perez Dep. p. 125).

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Disputed. Despite the City of Sweetwater's official written policy regarding vehicular pursuits, it was common practice to allow officers to pursue vehicles for any reason, anywhere

including outside of their geographical jurisdiction. (MDPD Case # 09001032 Demurias Report, Benito Dep. p. 38-40).

26. Undisputed.

27. Disputed. Corporal Benito was previously commended while in his training for participating in a pursuit that resulted in a vehicular rollover and began as a traffic violation. (MDPD Case # 09001032 Demurias Report, Sweetwater Response to PL RFP BS 0000145).

# PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS AS TO WHICH THERE IS EXIST GENUINE ISSUES TO BE TRIED

1. Brioso, Duarte, Gonzalez and Benito were outside of their geographical jurisdiction when the stop, investigation and pursuit were conducted. (Brioso Dep. p. 27). There was no mutual aid agreement in place on January 2, 2012 between the City of Sweetwater and Miami Dade County that would allow a Sweetwater officer to enforce traffic violations on Eighth Street, outside his jurisdiction. (Affidavit of No Records).

2. The City of Sweetwater maintained a written policy prohibiting: "A: Firing into the air or ground in an attempt to halt a fleeing criminal; B. Firing at a person who has been ordered to halt and simply continues walking or runs away; C. Police Officers shall not discharge his firearm to effect an arrest or to stop the fight (sic) of a person who has committed a misdemeanor; D. Firing at or into moving vehicles." (Sweetwater SOP 1.21.2, BS 00001025).

3. Gonzalez and Brioso were not aware of any such policy and had not been trained on that policy. (Gonzalez Dep. p. 33, Brioso Dep. p. 65).

4. The City of Sweetwater's failure to train Gonzalez and Brioso properly on the safe and accepted procedures to follow with regard to their firearms was the moving force behind their actions and the resulting injuries to Juan Perez. (Taylor Report p. 5, Taylor Dep. p. 115).

5. The City of Sweetwater maintained a policy requiring all officers who intentionally discharge their firearms to immediately report the incident to their supervisor and submit a report to the chief via chain of command. (Sweetwater SOP 1.21.3, BS 00001025).

6. Neither Gonzalez nor Brioso knew of the policy requiring an officer who discharges a firearm to file a written report. (Gonzalez Dep. p. 94-95, Brioso Dep. p. 77-78). They did not follow this policy, were not required to follow this policy and were not reprimanded or investigated for failure to follow the policy.

7. The FDLE, MDPD and FBI have independently and collaboratively conducted a number of investigations (collectively hereinafter "the investigations") regarding the Sweetwater Police Department ("SPD") and have concluded that there exists an ongoing pattern of criminal activity by members of the SPD. (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p. 3).

8. The investigations detail a lack of proper screening of police department hires including the hiring of officers fired from other departments after findings of numerous sustained allegations of misconduct (*Id*. at p. 4-6).

9. During the time of this incident, there existed "culture of corruption that permeated all aspects of the City of Sweetwater". (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p.7 ).

10. This corruption included "the use of official police resources" to tow and unlawfully seize and forfeit numerous vehicles from unsuspecting victims. (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p.7-8*).*

11. Many of the vehicles "were towed at the order of the SPD without the lawful authority to do so, thereby giving the City of Sweetwater an unjust windfall." (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p. 8).

12. It is SPD's culture, custom and common practice to improperly stop, detain, arrest and batter individuals, outside of SPD's jurisdiction. (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p. 22, 30, 38, 46, 47, 52, 56).

13. In addition to improper stops outside of the SPD jurisdiction, SPD has unlawfully had vehicles towed outside of SPD's jurisdiction, which resulted in falsified reports. (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p. 29, 42).

14. Mr. Torrealba's late model Mercedes Benz vehicle is the type of vehicle targeted by the SPD to illegally seize and forfeit. (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p. 36)

15. Current SPD Chief Placido Diaz asked the FDLE to conduct an audit of the SPD because of "suspected abnormalities that occurred during the administration of former Police Chief Fulgueria". The audit revealed numerous deficiencies SPD operations, policies and procedures and that the property room was run in a "corrupt manner" that "allowed for police officers and detectives to routinely take property from citizens without ever checking the property into evidence." (Affidavit in Support of Arrest Warrant – William Garcia and Remy Garcia p.9 ).

16. "A culture of corruption existed throughout the SPD" *Id.*

17. The SPD culture was such that it acted to "conceal the officer's unlawful activity from outside authorities." *Id.*

18. Plaintiffs hereby incorporate all material facts alleged in their Response to Defendants Duarte, Brioso and Gonzalez's Statement of Material Facts.