UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24267-CIV-ALTONAGA/Goodman

**JUAN L. PEREZ** and **MARIA A. POSADA**,

 Plaintiffs,
vs.

**CITY OF SWEETWATER**, *et al.*,

 Defendants.
_____/

**ORDER**

 **THIS CAUSE** came before the Court on Defendant, City of Sweetwater's Motion for Summary Judgment [ECF No. 69], filed May 30, 3017. In support of its Motion, the City filed a contemporaneous Statement of Undisputed Material Facts ("City Statement") [ECF No. 70] and an Appendix [ECF No. 71], containing nine exhibits [ECF Nos. 71–1 to 71–9]. In opposing summary judgment, Plaintiffs, Juan L. Perez and Maria A. Posada, submitted a Response [ECF No. 80] to the Motion, along with a Response ("Plaintiffs' Statement") [ECF No. 81] to the City Statement containing a number of disputed facts, and a Notice of Filing [ECF No. 82] exhibits in support of Plaintiffs' Statement, containing 21 exhibits [ECF Nos. 82–1 to 82–21]. Undeterred by Plaintiffs' opposition, the City submitted a Reply [ECF No. 89], insisting the material facts are undisputed and the City is entitled to a final summary judgment.

 Summary judgment may only be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). If "the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citations omitted).

The Court summarized Plaintiffs' claims in its Order [ECF No. 30] of December 22, 2016, granting in part and denying in part Defendants' Motion to Dismiss [ECF No. 18]:

> This case arises out of injuries sustained by Perez when Felipe Torrealba ("Torrealba"), a non-party, crashed into Perez's pick-up truck while fleeing the City's police officers during a high-speed chase. (*See generally* Compl.). To elaborate, on the morning of January 2, 2012, Officer Brioso stopped Torrealba for driving erratically. (*See id.* ¶¶ 25–26). Officers Duarte and Gonzalez arrived at the scene as back up. (*See id.* ¶ 27). Torrealba was asked to exit the car and then the "routine [traffic] stop" escalated into "a physical confrontation . . . unrelated to the purpose of the traffic stop, during which Officers Brioso and Gonzalez drew their weapons and attempted to shoot Torrealba." (*Id.* ¶ 29 (alterations added)).
>
> The Officers "justified their actions after the fact by claiming that Torrealba had given 'false information regarding his identity' during the stop . . . ." (*Id.* ¶ 30 (alteration added)). The Officers then "fired their weapons" at Torrealba with the "inten[t] to harm [him] in a manner that was unrelated and disproportionate to the legitimate object of their arrest." (*Id.* ¶ 31 (alterations added)). Torrealba fled in his car "fearing for his life," and Duarte began a high-speed chase while Brioso and Gonzalez "shot at Torrealba's vehicle." (*Id.* ¶¶ 32–33).

> This altercation and chase took place during morning rush hour. (*See id.* ¶ 33). Perez was driving to work when Torrelba crashed into his pick-up truck while fleeing "the stop in fear for his life." (*Id.* ¶¶ 33–34, 36). Perez's truck rolled multiple times off the road and struck a palm tree (*see id.* ¶ 37); he was rescued from the crushed truck by Miami-Dade Fire Rescue and taken to a hospital where he "was diagnosed with a closed head injury and subdural hematoma," (*id.* ¶¶ 37–38). Perez's brain injury left him "permanently disabled and unable to work," and the effects of the crash "harmed his marriage" to Posada. (*Id.* ¶ 39).
>
> Plaintiffs filed this action against the City and its Officers, alleging: (1) negligence against the City ("Count I") and Officers ("Count II"); and (2) deprivation of life and liberty without due process in violation of the Fourteenth Amendment against the Officers ("Count III") and City ("Count IV") under 42 U.S.C. section 1983. (*See generally id.*). Posada brings a loss of consortium claim as a derivative cause of action as to each of the counts. (*See generally id.*).

(*Id.* 1–2).

In its Motion and accompanying Statement, the City marshals the key, purportedly "undisputed" facts as follows. The City asserts while driving to work on January 2, 2012, Brioso observed a Mercedes-Benz sedan street racing a BMW; the BMW fled onto the Florida Turnpike and Brioso effected a traffic stop on Southwest 8 Street in Miami-Dade County; Brioso radioed dispatch and reported the traffic stop; Duarte, Gonzalez, and Benito responded as back up; Brioso approached the Mercedes and requested a driver's license; Torrealba claimed he did not have one but produced a Texas identification card; Brioso instructed Torrealba and the passenger to exit the car and they complied; Benito ran Torrealba's name through DAVID and discovered Torrealba had a Florida driver's license and there were active warrants for his arrest; from the license photo Benito observed Torrealba had a neck tattoo and one of the officer yelled, asking if Torrealba had a neck tattoo; Torrealba ran to the Mercedes, opened the driver's door, and reached toward his waistband; Duarte immediately followed and grabbed Torrealba; Gonzalez observed Torrealba draw a gun and yelled "gun" while Torrealba began driving away; Duarte was dragged several feet before falling away from the car; Gonzalez and Brioso discharged their

3

weapons at Torrealba, firing more than 20 times, but Torrealba was not hit; Gonzalez and Brioso went to check on Duarte; Torrealba fled eastbound on Southwest 8 Street at an excessive speed; no City police officer engaged in a vehicular pursuit of Torrealba; Perez was driving eastbound on 8 Street and Torrealba crashed into his truck at Southwest 8 Street and 102 Avenue, causing Perez's truck to flip several times and land upside down; when Torrealba fled, Benito entered his car and saw Torrealba run the red light at 107 Avenue and 8 Street; Benito followed, turning his emergency equipment on to safely clear the intersection at 107 Avenue and 8 Street; as Benito approached 106 Avenue, he saw a big cloud of smoke at 102 Avenue and 8 Street; Benito drove to the scene and reported the accident to dispatch; Torrealba fled on foot and escaped; officers tried to capture Torrealba but were unsuccessful; Torrealba was captured months later after being on the U.S. Marshal's 15 Most Wanted List; the City had policies and procedures governing the conduct of its police officers; one policy governed police pursuits; the City required all officers to be state-certified by the Florida Department of Law Enforcement; all City officers were required to complete the police academy and successfully pass the state certification exam; after being hired by the City, police officers were required to successfully complete a field training program; and the City does not have a history of allowing improper police pursuits. (*See generally* City Statement; App.).

Plaintiffs admit some of the City's facts, but generally dispute many of the material facts. Plaintiffs state the BMW did not go past the turnpike; Torrealba did produce a driver's license from Texas; the Officers were not made aware of active warrants until after they had fired repeatedly at Torrealba and pursued his car; Torrealba was not reaching for his waistband, rather, he was standing outside his car with his hands in the air seconds before entering the Mercedes; no Officer got into the car with Torrealba; Gonzalez could not have seen a gun as there was no

4

gun; Duarte says Gonzalez was yelling about a gun before Torrealba got into the car, when it would have been impossible for him to have seen one; Duarte was never dragged by the car; Gonzalez and Brioso shot at the Mercedes more than 20 times as it was driving away and Torrealba was hit in the ear by one bullet; Gonzalez and Brioso took off after Torrealba, behind Benito; Benito was already in his car with the engine running when Torrealba ran to his car, and immediately followed the Mercedes as it was driving off; Benito was already inside his car with the car turned on when Torrealba began driving off in the Mercedes; Benito was reporting his location to the dispatcher while following Torrealba; Benito was already at the scene and did not have to drive to the scene of the accident; Perez's first memory when he opened his eyes after the impact was a police officer pointing a gun directly at him; despite the City's official written policy regarding vehicular pursuits, it was common practice to allow officers to pursue vehicles for any reason, including outside the City's geographic jurisdiction; and Benito was even commended while in training for participating in a pursuit that resulted in a vehicular rollover and began as a traffic violation. (*See generally* Pls' Statement; Notice of Filing).

In addition to the foregoing disputed facts, Plaintiffs provide other material facts in opposition. Plaintiffs state Brioso, Duarte, Gonzalez, and Benito were outside their geographical jurisdiction when the stop, investigation, and pursuit were conducted. (*See* Pls' Statement 4[1]). There was no mutual aid agreement in place between the City and Miami Dade County that would allow a City officer to enforce traffic violations on 8 Street, outside the City's jurisdiction. (*See id.*). The City maintained a written policy prohibiting firing into the air or ground in an attempt to stop a fleeing criminal, firing at a person who has been ordered to halt and continues to run away, discharging police firearms to effect an arrest or stop the flight of a person who has

---

[1] The Court uses the pagination provided by the Court's CM/ECF system, as Plaintiffs' Statement does not include page numbers.

Case 1:16-cv-24267-CMA Document 99 Entered on FLSD Docket 07/06/2017 Page 6 of 8
CASE NO. 16-24267-CIV-ALTONAGA

committed a misdemeanor, and firing into moving vehicles. (*See id.*). But Officers Gonzalez and Brioso were not aware of that policy and had not been trained on it. (*See id.*). The City's failure to train Gonzalez and Brioso on the safe use of firearms was the moving force behind their actions and the resulting injuries to Perez. (*See id.* 5).

The City had a policy requiring officers who intentionally discharged their firearms to immediately report it to their supervisors and submit a report to the chief. (*See id.*). Neither Gonzalez nor Brioso knew of that policy and did not follow it, without consequence. (*See id.*).

The FDLE, MDPD, and FBI have investigated the City's Police Department and have concluded there exists a pattern of criminal activity by members of the City Police Department. (*See id.*). The investigations describe a lack of proper screening of Police Department hires and a culture of corruption permeating all aspects of the City. (*See id.*). This corruption included the use of official police resources to tow and unlawfully seize and forfeit numerous vehicles from unsuspecting victims. (*See id.* 6). Many of the cars were towed at the order of the City Police Department without lawful authority, giving the City an unjust windfall. (*See id.*).

It was the City Police Department's culture, custom and practice to improperly stop, detain, arrest, and batter individuals outside the City's jurisdiction. (*See id.*). Torrealba's late model Mercedes Benz is the type of vehicle targeted by the City Police Department to illegally and forfeit. (*See id.*).

Current City Police Chief Placido Diaz has asked the FDLE to conduct an audit of his Department because of suspected abnormalities that occurred during the preceding administration. (*See id.*). The audit revealed numerous deficiencies in Police Department operations, policies, and procedures, allowing for officers to routinely take property from citizens without ever checking the property into evidence. (*See id.*). The Department culture of

corruption served to conceal the officers' unlawful activities from outside authorities. (*See id.* 7).

On the basis of this record of material, disputed facts, the City asks for final summary judgment. While the City asserts "none of Plaintiffs' citations to the record support the false statements" (Reply 3) made in Plaintiffs' opposition papers, the Court has personally reviewed each of the documents submitted with Plaintiffs' Notice of Filing and finds most of Plaintiffs' disputed facts are supported by the record excerpts provided.

The City correctly states, "[t]o establish liability based on a custom, Plaintiffs must prove a *de facto* unconstitutional practice so widespread that, 'although not authorized by written law or express municipal policy,' it is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" (Reply 4–5 (emphasis omitted) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Plaintiffs have amply presented material disputed facts supporting an unconstitutional City custom and practice.

The parties' voluminous, competing briefing and submissions plainly show the record is brimming over with disputed issues of material fact. Indeed, the Court is hard-pressed to locate any material facts on which the parties agree. Disputed factual issues are for the jury to determine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (alteration added)).

Being fully advised, it is

**ORDERED AND ADJUDGED** that the City of Sweetwater's Motion for Summary Judgment **[ECF No. 69]** is **DENIED**.

CASE NO. 16-24267-CIV-ALTONAGA

**DONE AND ORDERED** at Miami, Florida, this 6th day of July, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record