UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  16-24267-CIV-ALTONAGA/Goodman

JUAN L. PEREZ, *et al.*,

    Plaintiffs,
vs.

CITY OF SWEETWATER, *et al.*,

    Defendants.
_____/

**ORDER**

THIS CAUSE came before the Court on Defendants' *Daubert* Motion to Exclude Plaintiffs' Expert, Roy Taylor [ECF No. 67], filed May 30, 2017.  The Court has carefully reviewed the Motion, Mr. Taylor's Deposition Transcript [ECF No. 67-1], Plaintiffs' Response [ECF No. 74], the Expert Report of Roy G. Taylor [ECF No. 74-1], Defendants' Reply [ECF No. 87], and applicable law.

### I.    BACKGROUND

The parties are familiar with the disputed facts of this case (*see, e.g.*, Order [ECF No. 99]), and so the Court does not repeat that background here.  At issue is the ability of Plaintiffs to present at trial the testimony of their expert, Roy G. Taylor, retained "to review the use of deadly force by the Defendants occurring on January 2, 2012 which resulted in a motor vehicle causing serious injury to" Plaintiff, Juan L. Perez, and to opine whether Defendants "acted in accordance with established law enforcement standards."  (Report 1).

Defendants assert the question at trial will be whether the Defendant Police Officers engaged in an unconstitutional vehicle pursuit of Torrealba in violation of the Fourteenth Amendment's substantive due process clause, the standard Plaintiff must meet is arbitrary

conduct shocking to the conscience, and the Officers' use of force must be judged under the Fourth Amendment's standard of objective reasonableness.[1] (*See* Mot. 2). Defendants consequently seek to exclude Mr. Taylor — in full — for the following reasons: (1) rather than base his opinions on the constitutional standard of objective reasonableness, Mr. Taylor's opinions are based on an application of incomplete facts, impermissible credibility determinations, and consideration of violations of administrative policy or state statute; and (2) the opinions often usurp the province of the Court and jury.[2] (*See id.* 2–3). Defendants also appear to take issue with Mr. Taylor's qualifications, particularly his lack of expertise regarding Florida law. (*See id.* 3–7).

## II.   STANDARD

Rule 702, which governs expert testimony, states as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] Defendants' memorandum of law is internally inconsistent. After making the points noted, Defendants in contradictory fashion state: "The proper standard to determine whether an officer violated an innocent third party's substantive due process rights is whether the officer acted with 'a purpose to cause harm unrelated to the legitimate object of arrest.' . . . Importantly, this standard is much more stringent than the objective reasonableness standard that governs Fourth Amendment claims." (Mot. 4 (alteration added; internal citations omitted)).

[2] Defendants also argue even if Mr. Taylor's opinions satisfy *Daubert*, they should be excluded under Federal Rule of Evidence 403. (*See* Mot. 11–12). Because some of Mr. Taylor's opinions will not mislead the jury and cause unfair prejudice, this argument is summarily rejected.

FED. R. EVID. 702. Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). This "'gatekeeping'" function must be performed with regard to the admissibility of both expert scientific evidence and expert technical evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589 n.7, 597; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* at 1260 (emphasis, alterations, citation, and internal quotation marks omitted).

The Eleventh Circuit requires district courts to conduct a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert [must be] qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions [must be] sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony [must] assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (alterations added; citation omitted).[3] The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, the testimony satisfies each prong. *See id.* (citation omitted).

### III.   ANALYSIS

**A. Qualifications**

Expert testimony is admissible only if the testimony is given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702 (alteration added). The plain language of Rule 702 makes clear, "[w]hile scientific training or

---

[3] Part two of the Eleventh Circuit's admissibility inquiry — the reliability analysis — can be read to encompass sub-sections (b), (c), and (d) of Rule 702.

education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61. Assuming an expert is qualified to testify, the expert may testify only about matters within the scope of his or her expertise. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (explaining "the expert [must be] qualified to testify competently regarding the matters he intends to address" (alteration added; citations omitted)); *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." (internal quotation marks and citations omitted)). The inquiry is not stringent; "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062, at *2 (S.D. Fla. June 23, 2014) (internal quotation marks and citation omitted).

Mr. Taylor intends to testify concerning "law enforcement procedures and policy" (Taylor Dep. 66:1–5) and render the following opinions. Brioso's actions were contrary to accepted law enforcement training and authority granted under Florida law in stopping a motor vehicle for traffic infractions outside his jurisdiction. (*See* Report 4). Those actions and the actions of the other Defendant-Officers resulted in the unauthorized use of deadly force. (*See id.*). No protective pat down or frisk was conducted on Torrealba, yet a pat down is normal police procedure. (*See id.*). Twenty-three rounds being fired at a moving vehicle is in direct violation of the Sweetwater Police Department Standard Operating Procedures, Florida law, and the Supreme Court decision in *Tennessee v. Garner*, 471 U.S. 1 (1985). (*See id.*).

The Sweetwater Standard Operating Procedures (SOPs) governing the use of deadly force are consistent with the International Association of Chiefs of Police model policies. (*See id.*). The incident would not have transpired had Brioso used good judgment and acted within the law and his agency's procedures, on which all officers are trained. (*See id.* 5). The careless manner Brioso and Gonzalez fired at a moving vehicle needlessly endangered the life of Duarte and innocent citizens by not complying with the SOPs and cardinal rules of gun safety. (*See id.*). This and the pursuit of Benito precipitated the multi-car crash that injured Plaintiff Perez. (*See id.*).

Mr. Taylor is qualified with respect to each of these topics. He has a bachelor of science in criminal justice, a master of science in occupational safety, and he is a doctoral candidate in criminal justice and public policy. (*See* Curriculum Vitae [ECF No. 74-2] 2). With over 36 years of professional law enforcement experience, his past and current positions include several instances of service as chief of police in different cities in North Carolina and elsewhere, deputy sheriff, and law enforcement specialized instructor. (*See id.* 1). He has received extensive training in police practices and procedures from 1979 to the present. (*See id.* 3–5).

He has reviewed more than 100 police involved use-of-force cases and has trained thousands of law enforcement officers on the legal and professional standards regulating use of force. (*See* Report 2). Mr. Taylor has testified as an expert in court. (*See* Resp. 3; Taylor Dep. 66:13–68:16). With this background and experience, Mr. Taylor is certainly qualified to testify concerning the police practices at issue in this case. *See, e.g.*, *Feliciano*, 844 F. Supp. 2d at 1263. Whether Mr. Taylor is correct or not in his understanding of the SOPs and Florida law are matters Defendants may probe in cross-examination to the extent he is permitted to testify,

but do not result in a finding he lacks the qualifications to opine on all of the subjects identified in his Report.

### B. Reliability

Under Rule 702, expert testimony is admissible only if "the testimony is based on sufficient facts or data; . . . the testimony is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(b)–(d) (alterations added). Accordingly, a witness "relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Frazier*, 387 F.3d at 1261 (quoting FED. R. EVID. 702 advisory committee's note (2000 amends.)) (alteration added; internal quotation marks, emphasis, and citation omitted).

In *Kumho Tire*, the Supreme Court emphasized "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. While the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95 (footnote call number omitted). "But conclusions and methodology are not entirely distinct from one another. . . . [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (alterations added). "Rather, the trial court is free to 'conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Hendrix ex rel. G.P.*, 609 F.3d at 1194 (quoting *Joiner*, 522 U.S. at 146).

### 1. Sufficient Facts or Data

Expert testimony must be "based on sufficient facts or data." FED. R. EVID. 702(b). *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) ("[T]estimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." (alteration added)). An expert can also base his testimony on his experience, in which case he must explain "why that experience is a sufficient basis for the opinion." *Frazier*, 387 F.3d at 1261 (citing FED. R. EVID. 702 advisory committee's note (2000 amends.)).

Defendants take issue with Mr. Taylor's review of materials generated in discovery. In particular, they fault Mr. Taylor with not having read the deposition transcripts of Brioso and Benito, as well as the 300-plus page Miami Dade County investigative file that contains more sworn testimony from the involved Officers, the passenger of Torrealba's vehicle, crime scene reports, and other significant details regarding the traffic stop and accident. (*See* Reply 2). But Plaintiffs point out the hundreds of pages of information Mr. Taylor did review in formulating his opinions, as did Mr. Taylor himself at his deposition. (*See* Resp. 4–5; Taylor Dep.). Nevertheless, the items Mr. Taylor did and did not review were probed extensively at his May 3, 2017 deposition,[4] and it is evident at the time of his Report and sworn testimony, he had not reviewed all of the deposition testimony or the County investigative file.

Mr. Taylor's listed opinions in his Report are based on sufficient information supplied to him by Plaintiffs' counsel, as well as more than 30 years of experience in law enforcement, to satisfy *Daubert*. Mr. Taylor extensively explains at his deposition how his experience guides his conclusions regarding the inappropriateness of the Defendant-Officers' conduct. (*See generally*

---

[4] The parties continued taking discovery after the date of Mr. Taylor's deposition. (*See, e.g.*, Order [ECF No. 61]).

Taylor Dep.). And should Mr. Taylor, by the time of trial, not have reviewed the additional materials he acknowledged at his deposition not receiving, vigorous cross-examination will certainly make the point the jury should assign reduced weight to his opinions.

## 2. Reliable Principles and Methods Applied to the Facts of the Case

In *Daubert*, the Supreme Court set forth a non-exhaustive list of factors to consider in determining if a specific methodology is reliable under Rule 702: whether the methodology can and has been tested; whether the methodology has been subjected to peer review and publication; the known or potential rate of error and the existence and maintenance of standards controlling operation of the methodology; and whether the methodology has gained general acceptance in the scientific community. 509 U.S. at 593–94 (declining to set forth a "definitive checklist or test"); *accord Kumho Tire*, 526 U.S. at 141. These factors can be adapted to the particular expert testimony at issue. For example, "it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." *Kumho Tire*, 526 U.S. at 151. Regardless of which factors are applied, "[t]he key consideration is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) (alteration added) (quoting *Kumho Tire*, 526 U.S. at 156).

Defendants appear to take issue with the reliability of any methodology employed by Mr. Taylor with regard to some of his opinions, inasmuch as he lacks knowledge of Florida law and erroneously believes law enforcement officers in this State cannot conduct traffic stops outside their jurisdiction. (*See* Mot. 6–7). To this, Plaintiffs suggest effective cross-examination is

8

Defendants' only recourse, but any opinions grounded on an incorrect understanding of Florida law should be permitted. (*See* Resp. 6). The Court cannot agree with Plaintiffs' proposal.

Mr. Taylor admitted at his deposition his understanding of the Officers' ability to effectuate a traffic stop outside the City and use deadly force while doing so, was based on "cursory" research: "I haven't actually pulled any statutes, but I've talked to several people — actually, my deputy chief and my sergeant that were retired out of Florida — about the rules of mutual aid agreements and the extraterritorial jurisdiction, what those types of things are." (Taylor Dep. 70:21–71:2). Based on this superficial understanding, Mr. Taylor opines Brioso "initiated a traffic stop outside of his jurisdiction without authority to do so." (Report, 4). This is no more than *ipse dixit* and parroting of lay witness testimony — certainly not a reliable methodology. *See Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (alteration added)). Mr. Taylor's "theory," if one can call it that, "cannot be tested and, in any event, the Court has no basis for finding that [his] technique — whatever it may be — is generally accepted in the relevant scientific community." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12–CV–22481–UU, 2013 WL 5595938, at *5 (S.D. Fla. Aug. 12, 2013) (alteration added) (finding expert has offered "no methodology" despite a general reference to a broad set of guidelines).

In sum, Mr. Taylor's opinions, to the extent they rely on an incorrect[5] understanding of principles of governing law concerning a police officer's ability to act outside of his jurisdiction, derived from speaking to retired Florida law enforcement officers and little else, are excluded.[6]

---

[5] The Court is not commenting on whether Mr. Taylor's understanding of the law is correct or incorrect.

[6] Defendants also seek to exclude any opinions Mr. Taylor has reached concerning Defendants' credibility. (*See* Mot. 5). Mr. Taylor includes no such opinions in his Report. He commented at his

### C. Helpfulness

Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," but expert testimony generally is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citations omitted). Thus, while "[a]n expert may testify as to his opinion on an ultimate issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (alterations added; citations omitted). Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id.* (citations omitted).

Defendants assert Mr. Taylor's opinion the Officers' use of force was unreasonable because they did not act in conformity with City policy is unhelpful and misleading to the jury. (*See* Mot. 9). Further, they state Mr. Taylor's "reliance on these policies to conclude [] that the Officers' use of force was unreasonable does [sic] apply the correct constitutional standard of objective reasonableness and is therefore likely to cause confusion." (*Id.* 10 (alteration added)). According to Defendants, Mr. Taylor misapplies the "*Graham* criteria for objective reasonableness which requires the use of force not be judged from the 20/20 perspective of hindsight." (*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989))). Defendants also argue the law here will require Plaintiffs prove the Officers acted solely for the purpose of causing harm wholly unrelated to legitimate law enforcement objectives, and Mr. Taylor does not render

---

deposition that he did not find the Officers' version of events credible in response to questions by defense counsel. In any event, Mr. Taylor is not permitted to testify about his credibility determinations. *See, e.g.*, *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996).

opinions on that issue. (*See id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–49 (1998))). Plaintiffs' Response does not tackle these objections or issues, instead superficially insisting Mr. Taylor's opinions on the use of force and the Officers' objective reasonableness will be helpful to the jury. (*See* Resp. 7).

The parties' briefing on the issue of helpfulness is so wholly deficient that the Court is unable to isolate any opinions which are or are not admissible on the basis Mr. Taylor misapplies the correct legal standards in other ways besides his possible misunderstanding of an officer's ability to act outside his jurisdiction. Consequently, Defendants are free to raise this objection at trial, and the Court will entertain testimony outside the jury's presence before entering a ruling.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' *Daubert* Motion to Exclude Plaintiffs' Expert, Roy Taylor **[ECF No. 67]** is **GRANTED in part** and **DENIED** in part.

**DONE AND ORDERED** in Chambers at Miami, Florida this 14th day of July, 2017.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record